# EXHIBIT C

**Requests for Admission**

**Requests for Admission:  Exhibit C**

*[C-1]   Requests for Admission from Petitioner Pfaff to Respondent Deutsche Bank.*

[1]   Admit that "Bank A" in U.S. v. Vorley, et al., 18-CR-0035 (N.D. Ill.) is Deutsche Bank.

[2]   Admit that "Bank A" in CFTC v. Vorley, Case No. 18-cv-00603 (N.D. Ill. 2018) is Deutsche Bank.

[3]   Admit that "Bank A Trader #1", at footnote 3 to paragraph 4 of the Criminal Complaint in U.S. v. Vorley, et al., 18-CR-0035 (N.D. Ill.), is David Liew, an employee of Deutsche Bank, from December 2009 to February 2012.

[4]   Admit that David Liew was an employee of Deutsche Bank during the period January 1, 2012, to February 2012, and engaged in illegal spoofing of silver and/or silver derivatives.

[5]   Admit that James Vorley was an employee of Deutsche Bank during the period January 1, 2012, to April 30, 2013, and engaged in illegal spoofing of silver and/or silver derivatives.

[6]   Admit that James Cedric Chanu aka Cedric Chanu was an employee of Deutsche Bank during the period January 1, 2012, to April 30, 2013, and engaged in illegal spoofing of silver and/or silver derivatives.

[7]   Admit that the losses incurred by Petitioner regarding "DZ BANK Open End Turbo Optionsscheine auf Edelmetalle" with German securities identification code ("*Wertpapierkennnummer*", hereinafter "WKN") WKN DZ8DKA may have been caused by illegal spoofing or other illegal manipulation activity by James Vorley while in the employ of Deutsche Bank.

[8]   Admit that the losses incurred by Petitioner regarding "DZ BANK Open End Turbo Optionsscheine auf Edelmetalle" WKN DZ77VN may have been caused by

illegal spoofing or other illegal manipulation activity by James Vorley while in the employ of Deutsche Bank.

[9]   Admit that the losses incurred by Petitioner regarding "DZ BANK Open End Turbo Optionsscheine auf Edelmetalle" WKN DZ8X9E may have been caused by illegal spoofing or other illegal manipulation activity by James Vorley while in the employ of Deutsche Bank.

[10]   Admit that the losses incurred by Petitioner regarding "DZ BANK Open End Turbo Optionsscheine auf Edelmetalle" WKN DZ8X9A may have been caused by illegal spoofing or other illegal manipulation activity by James Vorley while in the employ of Deutsche Bank.

[11]   Admit that the losses incurred by Petitioner regarding "DZ BANK Open End Turbo Optionsscheine auf Edelmetalle" WKN DZ8DKA may have been caused by illegal spoofing or other illegal manipulation activity by Cedric Chanu while in the employ of Deutsche Bank.

[12]   Admit that the losses incurred by Petitioner regarding "DZ BANK Open End Turbo Optionsscheine auf Edelmetalle" WKN DZ77VN may have been caused by illegal spoofing or other illegal manipulation activity by Cedric Chanu while in the employ of Deutsche Bank.

[13]   Admit that the losses incurred by Petitioner regarding "DZ BANK Open End Turbo Optionsscheine auf Edelmetalle" WKN DZ8X9E may have been caused by illegal spoofing or other illegal manipulation activity by Cedric Chanu while in the employ of Deutsche Bank.

[14]   Admit that the losses incurred by Petitioner regarding "DZ BANK Open End Turbo Optionsscheine auf Edelmetalle" WKN DZ8X9A may have been caused by illegal spoofing or other illegal manipulation activity by Cedric Chanu while in the employ of Deutsche Bank.

[15]   Admit that the losses incurred by Petitioner regarding "DZ BANK Open End Turbo Optionsscheine auf Edelmetalle" WKN DZ8DKA may have been caused by illegal spoofing or other illegal manipulation activity by David Liew while in the employ of Deutsche Bank.

[16]   Admit that the losses incurred by Petitioner regarding "DZ BANK Open End Turbo Optionsscheine auf Edelmetalle" WKN DZ77VN may have been caused by

illegal spoofing or other illegal manipulation activity by David Liew while in the employ of Deutsche Bank.

[17]   Admit that the losses incurred by Petitioner regarding "DZ BANK Open End Turbo Optionsscheine auf Edelmetalle" WKN DZ8X9E may have been caused by illegal spoofing or other illegal manipulation activity by David Liew while in the employ of Deutsche Bank.

[18]   Admit that the losses incurred by Petitioner regarding "DZ BANK Open End Turbo Optionsscheine auf Edelmetalle" WKN DZ8X9A may have been caused by illegal spoofing or other illegal manipulation activity by David Liew while in the employ of Deutsche Bank.

[19]   Admit that the losses incurred by Petitioner regarding "DZ BANK Open End Turbo Optionsscheine auf Edelmetalle" WKN DZ8DKA, DZ BANK Open End Turbo Optionsscheine auf Edelmetalle" WKN DZ77VN, "DZ BANK Open End Turbo Optionsscheine auf Edelmetalle" WKN DZ8X9E and "DZ BANK Open End Turbo Optionsscheine auf Edelmetalle" WKN DZ8X9A were caused by illegal spoofing, fraud or other illegal manipulation activity by one or more persons while in the employ of Deutsche Bank.

[20]   Admit that Deutsche Bank, as Chairman of the "London Silver Fixing", manipulated the silver price by discussing the result of the fixing dates in advance, making preliminary arrangements and determining the result of the fixing dates in advance.

[21]   Admit that Deutsche Bank, as a member of the London Fixing Committee, deliberately wanted and intended to send false signals to other market participants.

[22]   Admit that it was not only the quantity but also the market expectations of the participants that decided the fixing.

[23]   Admit that Deutsche Bank gained an advantage through these arrangements and harmed other market participants.

[24]   Admit that from approximately May 2007 until approximately March 2015, James Vorley was employed as a precious metals trader at Deutsche Bank and during that time traded precious metals futures contracts in his capacity as a precious metals trader at Deutsche Bank.

[25]   Admit that from approximately March 2008 until approximately December 2013, Cedric Chanu was employed as a precious metals trader at Deutsche Bank and during that time traded precious metals futures contracts in his capacity as a precious metals trader at Deutsche Bank.

[26]   Admit that on certain days beginning in or around at least May 2008 and continuing until in or around at least March 2015, in the Northern District of Illinois, Eastern Division, and elsewhere, Vorley, Chanu, and their co-conspirators (a) devised, executed, and participated in a scheme to defraud other market participants, and (b) engaged in the practice of spoofing, all in connection with precious metals futures contracts, all of which were financial products traded on the COMEX exchange.

[27]   Admit that spoofing was sometimes done with knowledge and consent of the Deutsche Bank supervisors.

[28]   Admit that Vorley, Chanu, and their co-conspirators placed one or more fully visible large spoof orders for precious metals futures contracts on one side of the market which, at the time that Vorley, Chanu, and their co-conspirators placed the orders, they intended to cancel before execution (aka "spoofing") and that the deliberate and intentional purpose of these spoof orders was to deceive and to harm other market participants and innocent investors by injecting materially misleading information into the market that implied increased supply or demand, but was not genuine because Vorley, Chanu, and their co-conspirators never intended to execute the bids or offers contained in these spoof orders.

[29]   Admit that while the spoof orders were pending, and in those instances when the spoof orders caused or assisted in causing price movements, Vorley, Chanu, and their co-conspirators executed Primary Orders of smaller visible quantities on the opposite side of the market in an attempt to profit for themselves and Deutsche Bank, to mitigate losses for themselves and Deutsche Bank, or otherwise to benefit from the artificial movement in price that they themselves had caused or had assisted in causing, with reckless disregard to the harm that would be inflicted upon other market participants and innocent investors.

[30]   Admit that the spoof order messages were wire communications that traveled in foreign and interstate commerce because Vorley, Chanu, and their co-conspirators placed the spoof orders from locations outside the United States, including from the United Kingdom and the Republic of Singapore, and such wires traveled into the United States.

[31]   Admit that Vorley and Chanu followed this general pattern to effectuate their illegal acts:

<u>First</u>, Vorley/Chanu would place a Primary Order to buy or to sell using an "iceberg" functionality on one side of the market close to the prevailing price at which that given precious metals futures contract was trading;

<u>Second</u>, after placement of the Primary Order and while the Primary Order was pending, Vorley/Chanu would place one or more fully visible orders of several lots, without using iceberg functionality, on the opposite side of the market from the Primary Order and close to (*i.e.*, typically within five ticks of) the prevailing price at which that given precious metals futures contract was trading (the "Opposite Order");

<u>Third</u>, at least one lot of Vorley's/Chanu's Primary Order would be filled; and

<u>Fourth</u>, after filling at least one lot of his Primary Order, Vorley/Chanu would quickly cancel his Opposite Order, typically within five seconds after placing the Opposite Order and before the Opposite Order could be executed.

[32]   Admit that Vorley, Chanu and Liew have conspired to deceive other traders by creating and communicating materially false and misleading information regarding supply or demand, in order to induce other traders into trading precious metals futures contracts at prices, quantities, and times that they would not have otherwise, in order to make money and avoid losses for the co-conspirators and for Deutsche Bank.

[33]   Admit that Vorley, Chanu and Liew placed one or more visible fraudulent orders for precious metals futures contracts on one side of the market that, at the time they placed the orders, they intended to cancel before execution in order to deceive other traders.

[34]   Admit that Vorley, Chanu and Liew placed fraudulent orders to buy that created the false and misleading impression in the market of increased demand, which was intended to manipulate and move commodity futures prices upward.

[35]   Admit that Vorley, Chanu and Liew placed fraudulent orders to sell that created the false and misleading impression in the market of increased supply, which was intended to manipulate and move commodity futures prices downward.

[36]   Admit that Vorley, Chanu and Liew placed Primary Orders at a lower visible quantity, often in the form of iceberg orders, on the opposite side of the market that they intended to execute.  (An iceberg order is an order in which the total amount of the order is divided into a visible portion of a certain pre-set quantity that was visible to other traders, and a portion of the order (*i.e.*, the remainder of the order) that was not visible.)

## *[C-2]   Requests for Admission from Petitioner Pfaff to Respondent DZ Bank.*

[1]   Admit that DZ Bank Open End Turbo Optionsscheine auf Edelmetalle WKN DZ8DKA was "knocked out" on or about 8 May 2012 (European time) and resulted in a loss to Petitioner of at least €382,208.21.

[2]   Admit that DZ Bank gained at least €382,208.21 (the purchase price paid by Petitioner, less hedging or other costs, if any) due to the "knock out" of DZ BANK Open End Turbo Optionsscheine auf Edelmetalle, WKN DZ8DKA.

[3]   Admit that DZ Bank Open End Turbo Optionsscheine auf Edelmetalle WKN DZ77VN was "knocked out" on or about 15 May 2012 (European time) and resulted in a loss to Petitioner of at least €601,254.46.

[4]   Admit that DZ Bank gained at least €601,254.46 (the purchase price paid by Petitioner, less hedging or other costs, if any) due to the "knock out" of DZ BANK Open End Turbo Optionsscheine auf Edelmetalle, WKN DZ77VN.

[5]   Admit that DZ Bank Open End Turbo Optionsscheine auf Edelmetalle WKN DZ8X9E was "knocked out" on or about 15 April 2013 (European time) and resulted in a loss to Petitioner of at least €1,381,218.95.

[6]   Admit that DZ Bank gained at least €1,381,218.95 (the purchase price paid by Petitioner, less hedging or other costs, if any) due to the "knock out" of DZ BANK Open End Turbo Optionsscheine auf Edelmetalle, WKN DZ8X9E.

[7]   Admit that DZ Bank Open End Turbo Optionsscheine auf Edelmetalle WKN DZ8X9A was "knocked out" on or about 16 April 2013 (European time) and resulted in a loss to Petitioner of at least €647,369.46.

[8]   Admit that DZ Bank gained at least €647,369.46 (the purchase price paid by Petitioner, less hedging or other costs, if any) due to the "knock out" of DZ BANK Open End Turbo Optionsscheine auf Edelmetalle, WKN DZ8X9A.

[9]   Admit that, because DZ Bank has (and in 2012-2013 had) no direct access to the silver market, DZ Bank had to execute and did execute hedges in the over-the-counter (OTC) market through a counterparty which can trade silver directly.

[10]   Admit that DZ Bank's counterparty for its silver hedges in the time period from 2012 to 2013 was Respondent Deutsche Bank.

[11]   Admit that DZ Bank's counterparty for its silver hedges regarding WKN DZ8DKA was Respondent Deutsche Bank.

[12]   Admit that DZ Bank's counterparty for its silver hedges regarding WKN DZ77VN was Respondent Deutsche Bank.

[13]   Admit that DZ Bank's counterparty for its silver hedges regarding WKN DZ8X9E was Respondent Deutsche Bank.

[14]   Admit that DZ Bank's counterparty for its silver hedges regarding WKN DZ8X9A was Respondent Deutsche Bank.