**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHRISTOF PFAFF,<br><br>    Petitioner,<br><br>  - against -<br><br>DEUTSCHE BANK AG, DZ BANK AG DEUTSCHE ZENTRAL–GENOSSENSCHAFTSBANK, and COMMODITY EXCHANGE, INC (aka "COMEX"),<br><br>    Respondents. | Case No.: 1:20-mc-25-KPF |

**RESPONDENT DEUTSCHE BANK AG'S SUR-REPLY MEMORANDUM OF LAW IN FURTHER OPPOSITION TO PETITIONER'S SUPPLEMENTAL PETITION FOR DISCOVERY UNDER 28 U.S.C. § 1782**

Respondent Deutsche Bank respectfully submits this sur-reply for the limited purpose of responding to several new arguments in Petitioner's reply brief.  Pfaff claims that this Court has general and specific jurisdiction over his petition and that granting it would be appropriate under the factors identified in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 265 (2004). None of these arguments is correct.  Pfaff's claim that this Court has general jurisdiction "by virtue of [Deutsche Bank's] registration with the New York Department of Financial Services" (Pet.'s Reply at 6, ECF No. 42 (hereinafter "Reply")) has been "uniformly rejected." *Sullivan v. Barclays PLC*, No. 13-cv-2811 (PKC), 2017 WL 685570, at *39 (S.D.N.Y. Feb. 21, 2017).  Indeed, the primary case Pfaff relies upon, *Vera v. Republic of Cuba*, 91 F. Supp. 3d 561 (S.D.N.Y. 2015), has been vacated and is no longer good law in light of intervening Second Circuit precedent.  Pfaff's claim that this Court has specific jurisdiction, in turn, relies on an assertion that all of the relevant trading in this case occurred on a New York–based market, which is simply not true (and for which Pfaff has offered no competent evidence despite filing two new declarations).

Even if this Court did have jurisdiction, it should decline to exercise it.  This is the unusual case where a Section 1782 petition is filed against a foreign defendant in a different forum, which risks (and, here, involves) straightforward forum shopping.  Pfaff claims that the discovery he seeks was somehow authorized or expected in Germany, but the only available evidence (the German court's denial of a stay sought in light of a pending Section 1782 petition) suggests otherwise.  Given these and other considerations, his petition should be denied.

## **ARGUMENT**

### I. **PFAFF'S CLAIM THAT THIS COURT HAS GENERAL JURISDICTION OVER DEUTSCHE BANK MISCONSTRUES SECOND CIRCUIT LAW.**

Pfaff claims that Deutsche Bank has consented to general jurisdiction in this district "by virtue of its registration with the New York Department of Financial Services."  (Reply at 6.)  "The

Second Circuit," however, "has rejected this species of argument." *Austl. & N.Z. Banking Grp. Ltd. v. APR Energy Holding Ltd.*, No. 17-MC-00216 (VEC), 2017 WL 3841874, at \*4 (S.D.N.Y. Sept. 1, 2017).[1]   A court has general jurisdiction over an entity only when that entity is headquartered in its district, has its principal place of business there, or where "exceptional" circumstances exist. *See Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014).  While registration with a state regulator may be relevant to these determinations, registration is not by itself sufficient.  *See, e.g.*, *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 626 (2d Cir. 2016) (declining to read Connecticut's business-registration and agent-appointment statute as "embodying actual consent by every registered corporation to the state's exercise of general jurisdiction over it" in light of due process concerns).

Indeed, courts in this district have expressly rejected Pfaff's argument and held that registration with the Department of Financial Services is insufficient to give rise to general jurisdiction.  In *Motorola Credit Corp. v. Uzan*, 132 F. Supp. 3d 518 (S.D.N.Y. 2015), a petitioner filed a Section 1782 request seeking discovery from several banks located in New York.  Like Pfaff, the petitioner argued that the banks had "constructively consented to the Court's jurisdiction" by virtue of having "register[ed] with . . . the Superintendent of the Department Financial Services, who may receive service on their behalf."  *Id.* at 521.  The court, however, rejected this argument, holding that the "mere operation of a branch office in a forum—and satisfaction of any attendant licensing requirements—is not constitutionally sufficient to establish general jurisdiction."  *Id.* (citing *Gucci*, 768 F.3d at 135-36).  "Accordingly, the Court [found] that

---

[1]   All emphasis is added, and all internal quotation marks, citations, and alterations are omitted unless otherwise noted.  All capitalized terms bear the same meaning defined in Deutsche Bank's Opposition Brief, ECF No. 34.

the banks did not consent to this Court's jurisdiction by registering or being licensed under New York Banking Law § 200 or federal law." *Id.* at 521-22.

In response, Pfaff simply argues that *Motorola* is "erroneous[]." (Reply at 6.) But he offers no compelling reason why, and multiple other courts in this Circuit have arrived at the same conclusion as Judge Rakoff in *Motorola*. *See, e.g.*, *In re Aso*, No. 19-MC-190 (JGK) (JLC), 2019 WL 3244151, at *5 (S.D.N.Y. July 19, 2019) ("declin[ing]," in a Section 1782 case, "to bridge the crucial gap between New York's business registration statute and the Subject Entities' consent to general jurisdiction of state's courts"); *Austl. & N.Z. Banking Grp. Ltd.*, 2017 WL 3841874, at *4 (rejecting petitioner's argument "that ANZ Bank has nevertheless consented to jurisdiction in New York because its New York branch is regulated by the International Banking Act of 1978"); *see also In re Del Valle Ruiz*, 342 F. Supp. 3d 448, 457 (S.D.N.Y. 2018) (citing *Motorola* with approval). Multiple courts in this district have also specifically held that they lack general jurisdiction **over Deutsche Bank** after considering its operations in New York and its registration status. *See, e.g.*, *Sonterra Capital Master Fund Ltd. v. Barclays Bank PLC*, 366 F. Supp. 3d 516, 560-61 (S.D.N.Y. 2018); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-md-2262, 2016 WL 1558504, at *7 (S.D.N.Y. Apr. 15, 2016); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-md-2262, 2015 WL 6243526, at *27 (S.D.N.Y. Oct. 20, 2015); *Wertheim Jewish Educ. Tr., LLC v. Deutsche Bank AG*, No. 17-CV-60120-KMM, 2017 WL 6313937, at *12 (S.D. Fla. Dec. 6, 2017). Pfaff would place this Court at odds with all of those cases.

In any event, there is nothing about New York's banking laws that would constitute consent to general jurisdiction. Pfaff claims that New York's banking laws subject registrants to suits whenever they are "'doing business in this state.'" (Reply at 7 (citing N.Y. Banking L. § 200-b(2)(e)); *see also id.* (arguing "New York courts have held that this provision squarely affirms the

right of a foreign banking corporation or non-resident to sue a foreign banking corporation doing business in New York").)  That is a blatant misreading of the statute, which "[c]ourts have been virtually unanimous in concluding . . . ***does not provide for general jurisdiction***."  *FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A.*, No. 16 CIV. 5263 (AKH), 2017 WL 3600425, at *4 (S.D.N.Y. Aug. 18, 2017); *see also Sullivan*, 2017 WL 685570, at *39 ("The statute does not establish a consent to jurisdiction by the branch's foreign parent, and courts in this District have ***uniformly rejected*** plaintiffs' argument.").  The provisions Pfaff cites relate to the general ability to be sued, not to personal jurisdiction.  Provisions of the banking laws that ***do*** relate to jurisdiction confirm that registrants need consent only "to suits 'arising out of a transaction with its New York agency or agencies or branch or branches,' and [are] thus relevant only to specific jurisdiction, not general jurisdiction."  *FrontPoint*, 2017 WL 3600425, at *4 (quoting N.Y. Banking L. § 200(3)); *see also 7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.*, No. 13 Civ. 981 (PGG), 2015 WL 1514539, at *11 (S.D.N.Y. Mar. 31, 2015) ("The plain language of this provision limits any consent to personal jurisdiction by registered banks to specific personal jurisdiction."); *In re LIBOR*, 2016 WL 1558504, at *7 ("[T]he most natural reading of the provision does not provide general jurisdiction.").  The state cases that Pfaff cites are consistent with this rule.[2]

   *Vera v. Republic of Cuba* does not support a contrary conclusion.  (*See* Reply at 8.)  That case is no longer good law.  It was recently vacated, *Vera v. Banco Bilbao Vizcaya Argentaria,*

---

[2]   Pfaff cites two New York cases.  (*See* Reply at 6-7 (citing *World Point Trading PTE v. Credito Italiano*, 225 A.D.2d 153 (1st Dep't 1996), and *B&M Kingstone LLC v. Mega Int'l Commercial Bank Co.*, 131 A.D.3d 259 (1st Dep't 2015)).)  *World Point* is irrelevant because it is about "the application of the doctrine of forum non conveniens."  225 A.D.2d at 155.  And far from holding that New York courts have general jurisdiction over registered banks, the court actually held that the case should ***not*** proceed in New York. *See id.* at 161.  *B&M Kingstone LLC* is no better.  That case recognized that "New York does not have general jurisdiction over [a registered bank's] worldwide operations," 131 A.D.3d at 264, and it relied on *Vera*, 91 F. Supp. 3d 561, which, as discussed below, is no longer good law.

*S.A.*, 946 F.3d 120 (2d Cir. 2019), and its reasoning has "since been rejected by the Second Circuit." *Leibovitch v. Islamic Republic of Iran*, 188 F. Supp. 3d 734, 750 (N.D. Ill. 2016), *aff'd*, 852 F.3d 687 (7th Cir. 2017). "After *Vera* was decided, the Second Circuit expressly held that in light of *Daimler*, a foreign corporation's compliance with state registration and agent-appointment statutes did not give rise to general jurisdiction, even though 'they might have sufficed under the more forgiving standard that prevailed in the past.'" *Leibovitch*, 188 F. Supp. 3d at 750 (quoting *Brown*, 814 F.3d at 626); *see also FrontPoint*, 2017 WL 3600425, at *4 (distinguishing *Vera* on the grounds that it involved unique "concerns" with "banks [] hid[ing] information concerning assets connected to terrorism in other countries").

## II.  PFAFF'S NEW ALLEGATIONS ON REPLY CANNOT ESTABLISH SPECIFIC JURISDICTION.

This Court likewise lacks specific jurisdiction over Deutsche Bank. Pfaff concedes that he "does not seek information relating to the business" of Deutsche Bank's New York branch and instead argues that Deutsche Bank's "trading activity at COMEX in New York" is the "but for" "reason why the evidence is available." (*Id.* at 9, 11.) This argument, however, is insufficient to show that "the discovery material sought proximately resulted from the respondent's forum contacts" for several reasons. *Valle Ruiz*, 939 F.3d at 530.[3]

---

[3]  Whether the standard requires "proximate" or "but for" causation makes no difference here, but the former should apply. Pfaff claims that "Deutsche Bank's contacts in New York through its branch office are broad and significant," justifying the lower "but for" standard. (*See* Reply at 10-11.) But specific jurisdiction requires "a substantial connection" between "[t]he defendant's ***suit-related*** conduct" and the forum. *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 344 (2d Cir. 2018). "A defendant's general connections with the forum are not enough to support the exercise of specific jurisdiction." *Id.*; *see also Bristol-Myers Squibb Co. v. Superior Court of Calif., S.F. Cty.*, 137 S. Ct. 1773, 1781 (2017). Accordingly, Pfaff must demonstrate that Deutsche Bank's forum contacts are the "proximate reason that the evidence sought is available at all," which requires him to identify with "specificity" the connection between the discovery he seeks and this district. *Valle Ruiz*, 939 F.3d at 530 & n.12.

First, Pfaff's argument assumes that the discovery he seeks "pertains to trades at COMEX *in New York*." (Reply at 10; *see also id.* (arguing that Deutsche Bank made "regular use of the precious metals markets *in New York*" and "benefit[ted] from the *New York* commodities marketplace").) Pfaff, however, offers no evidence to support his claim that COMEX is in fact "in New York," and for good reason—COMEX is not located there. COMEX is part of the CME Group, which is headquartered in Chicago, Illinois, and executes trades over servers that are physically located in Aurora, Illinois.[4] While CME has offices in New York (and many other states and countries), Pfaff offers no reason to think that there were any relevant interactions with CME personnel in the New York office (and the Deutsche Bank traders for whom Pfaff seeks discovery were located in Singapore and London (*see* Deutsche Bank's Opp'n Br. at 5, ECF No. 34)). Under these circumstances, Pfaff cannot show that Deutsche Bank's contacts with New York were the proximate cause of the creation of the discovery he seeks.

Pfaff also seeks discovery relating to activity on other exchanges that he does not even claim are located in New York. One of Pfaff's interrogatories, for example, seeks information regarding "Deutsche Bank's share of trading in silver and silver derivatives on . . . LBMA (London Bullion Market Association), OTC (Over the Counter) and LME (London Metal Exchange)." (Req. Interrogs. No. 16, ECF No. 29.) Elsewhere, Pfaff seeks information related to "*all* silver trading events," which would also involve other exchanges. (Req. Docs. No. 1, ECF No. 1-1.) Still other requests seek Deutsche Bank's "net short position in silver and silver derivatives" and

---

[4]    *See CME Co-Location & Data Ctr. Serv.*, https://www.cmegroup.com/trading/colocation/co-location-services.html (last accessed Mar. 9, 2020) (discussing co-location of servers at CME's Aurora, Illinois location); *see also* CME Grp., Inc. Annual Report (Form 10-K), at 24-25 (Feb. 28, 2020), http://investor.cmegroup.com/static-files/a9ff062b-fba6-4b33-b2a8-ef1f57846d23 (noting that "[o]ur corporate headquarters are located in Chicago, Illinois at 20 South Wacker Drive," "our trading floor is located at 333 S. LaSalle Street, Chicago, IL," and CME "lease[s] [its] largest data center from CyrusOne in Aurora, IL").

"all written communications . . . between Deutsche Bank and DZ Bank" regarding matters unrelated to COMEX. (*See* Req. Interrogs. Nos. 18-19, ECF No. 29; Req. Docs. No. 21, ECF No. 1-1.) Pfaff cannot tie these requests or his dozens of others to Deutsche Bank's New York contacts.

Unable to articulate an underlying New York nexus, Pfaff claims that the information he seeks "is easily accessible in New York" because it is electronic in nature. (Reply at 10.) Pfaff offers no supporting evidence suggesting that the information he seeks can actually be accessed from New York, but, even if it could, the accessibility of information cannot sustain jurisdiction. The Court must look to whether "the discovery material sought proximately resulted from the respondent's **forum contacts**." *Valle Ruiz*, 939 F.3d at 530. A party who produces and retains information outside New York has not made contact with the forum merely because electronically stored information is available in New York. *See, e.g.*, *FrontPoint*, 2017 WL 3600425, at *7 ("[T]he fact that electronic communications were routed through U.S.-wires or servers . . . is insufficient to establish minimum contacts with the United States."); *Laydon v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*, No. 12 Civ. 3419 (GBD), 2017 WL 1113080, at *4 (S.D.N.Y. Mar. 10, 2017) (same). Indeed, Pfaff's suggestion that specific jurisdiction exists wherever information is accessible would effectively eliminate the jurisdictional requirement in Section 1782.

Pfaff's argument that Deutsche Bank has previously produced documents in other cases in the United States is no more compelling. (*See* Reply at 10.) Even if a party has "produced [the requested] discovery in an action in which this Court ha[d] specific personal jurisdiction, . . . it does not follow that the Court therefore has authority to order [respondent] to turn over this discovery for use in a foreign proceeding that arises from conduct entirely outside the forum." *In re Petrobras Sec. Litig.*, 393 F. Supp. 3d 376, 383-84 (S.D.N.Y. 2019).

### III.    PFAFF'S SUPPLEMENTAL PETITION SHOULD BE REJECTED UNDER THE *INTEL* STANDARD.

Pfaff's petition fares no better under the four *Intel* factors.  On the first factor, which considers whether the respondent is also a participant in the foreign proceeding, Pfaff now claims that Deutsche Bank, although a defendant in the German proceedings, is "not conceptually or functionally" the "same as the 1782 *witness* Deutsche Bank."  (Reply at 12 (emphasis in original).) This distinction makes little sense.  The Supreme Court has instructed that this first factor is significant because "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence."  *Intel*, 542 U.S. at 264.  "In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid."  *Id.*  Pfaff's nonsensical attempt to distinguish between Deutsche Bank's role as a trader and Deutsche Bank's alleged role entering agreements with DZ Bank does not feature in this analysis.  The question is not whether Deutsche Bank has a multi-faceted role in the litigation, but whether the German court "can itself order [Deutsche Bank] to produce evidence."  *Id.*  Pfaff does not dispute that the German court can order Deutsche Bank to produce evidence.

Pfaff's arguments on the second and third *Intel* factors, which look to the foreign tribunal's receptivity and to whether the petition circumvents foreign proof-gathering restrictions, are identical.  (*See* Reply at 14.)  Pfaff claims that both factors weigh in his favor because, after he filed a copy of the ***Initial*** Petition with the German court in late August 2018, the Court was "fully apprised of Petitioner's efforts under § 1782" and told him to "'get the evidence,'" purportedly "fully knowing that meant going to the USA."  (*Id.* at 15.)  The German court, however, issued Pfaff no such directive.  The court merely directed—in the most general sense—that "[e]vidence is to be taken regarding" certain causation issues with his claim.  (Schmitt Decl. Ex. 3, Saarbrücken

8

Expert Order at 2, ECF No. 36-3.)  Pfaff cites no language in the German court's order that encourages him—much less instructs him—to seek discovery in America to satisfy the holes in his German case.  To the contrary, the **only** time the German court addressed Pfaff's Section 1782 petitions directly was when it denied Pfaff's request for a stay to accommodate his Initial Petition. (See Schmitt Decl. Ex. 2, Stay Order at 2-3, ECF No. 36-2.)[5]

On the fourth factor, regarding the burden the requests impose on the respondent, Pfaff excuses his expansive 82 requests as "modest" compared to the discovery Deutsche Bank produced in certain U.S. proceedings.  (Reply at 17.)  Deutsche Bank's responses to other litigations, however, are not a proper comparison for determining whether the Supplemental Petition is burdensome.  This Court must assess whether the petition is burdensome under the standards of Federal Rule of Civil Procedure 26, which instructs that discovery must be "relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26; *see also In re Hulley Enters., Ltd.*, 358 F. Supp. 3d 331, 352 (S.D.N.Y. 2019).  That analysis depends on the facts of every case and requires a court to "consider[] the importance of the issues ***at stake in the action***, the amount in controversy . . . the importance of the discovery ***in resolving the issues***, and whether the burden or expense of the proposed discovery ***outweighs its likely benefit***."  Fed. R. Civ. P. 26(b)(1).  Discovery produced in other cases or investigations does not reflect the needs of ***this*** case, and Pfaff has failed to offer any reason that his 82 discovery requests (made in a second Section 1782 petition) are proportionate to the needs of this case.[6]

---

[5]    Pfaff attempts to distinguish *In re Kreke Immobilien KG*, No. Misc. 110(NRB), 2013 WL 5966916 (S.D.N.Y. Nov. 8, 2013), *abrogated on other grounds by Valle Ruiz*, 939 F.3d 520, on the grounds that the petitioner in that case was attempting to evade a foreign court's almost certain rejection of its requests.  (Reply at 15.)  But that is precisely what Pfaff seeks to do— Pfaff made no attempt to obtain the discovery in Germany, nor does he suggest the German court would grant his requests.

[6]    Pfaff seeks to distinguish *In re Application of OOO Promnefstroy* by arguing that the court's

Finally, Pfaff argues that the Supplemental Petition does not implicate the GDPR, principally because Chanu, Liew, and Vorley no longer reside in the European Union. (*See* Reply at 19.) This argument ignores the numerous other requests for personal data in Pfaff's petition that implicate the GDPR. Pfaff seeks "[t]he names and addresses of every employee . . . contacted by the CFTC"; the "[n]ames and addresses" of Chanu's, Liew's, and Vorley's supervisors; the "names and addresses" of employees that these traders purportedly "trained in spoofing"; and the names and "current addresses of any other silver and silver derivatives traders" at Deutsche Bank. (Req. Docs. No. 13, ECF No. 1-1; Req. Interrogs. Nos. 1-5, 8, 13, 14, ECF No. 29.) To respond to Pfaff's requests, Deutsche Bank would need to scrutinize its responses for personal data to avoid compromising privacy rights. This contributes to Deutsche Bank's burden and, given the overall breadth of requests, makes them unreasonable under the circumstances. *See, e.g.*, *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 198 (S.D.N.Y. 2006) (denying petition in part because it sought "documents that may be protected as confidential by the [European] Commission's rules on access to file and that are privileged under U.S. law").

## **CONCLUSION**

For the aforementioned reasons, Deutsche Bank respectfully requests that the Court deny the Supplemental Petition in full.

---

burden analysis there was affected by the fact that the petitioner was seeking to evade foreign procedures. (Reply at 18.) However, the *Promnefstroy* court never referred to foreign procedures in its burden analysis and instead found the request "broad by any standard." No. M19-99(RJS), 2009 WL 3335608, at *9 (S.D.N.Y. Oct. 15, 2009). Pfaff then attempts to distinguish *Kreke Immobilien* for a second time, arguing that many of the petitioner's requests in that case were not time limited and related to an expensive acquisition. (Reply at 18.) But, as Deutsche Bank explained in its opposition brief, Pfaff makes at least four requests that are not time bound and makes 78 other requests without suggesting their relevance to the German court's order for an expert opinion. (Deutsche Bank's Opp'n Br. at 17-19 & n.6, ECF No. 34.)

Dated: March 11, 2020                    KIRKLAND & ELLIS LLP

                                         /s/ Robert W. Allen, P.C.
                                         Robert W. Allen, P.C.
                                         KIRKLAND & ELLIS LLP
                                         601 Lexington Avenue
                                         New York, New York 10022
                                         Telephone:  (212) 446-4800
                                         Facsimile:  (212) 446-4900

                                         *Counsel for Respondent Deutsche Bank AG*

11