UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTOF PFAFF,<br><br>                              Petitioner,<br><br>                    -v.-<br><br>DEUTSCHE BANK AG, DZ BANK AG DEUTSCHE ZENTRAL-GENOSSENSCHAFTSBANK, and COMMODITY EXCHANGE INC.,<br><br>                              Respondents. | 20 Misc. 25 (KPF)<br><br>**OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

Petitioner Christof Pfaff brings this petition (the "Petition") pursuant to 28 U.S.C. § 1782 for an order permitting him to take discovery from Respondents Deutsche Bank AG ("Deutsche Bank"), DZ Bank AG Deutsche Zentral-Genossenschaftsbank ("DZ Bank"), and Commodity Exchange Inc. ("COMEX"), for use in a pending foreign legal proceeding in Germany. Deutsche Bank and DZ Bank (together, "Moving Respondents") have opposed the Petition on the grounds that the Court lacks personal jurisdiction over them and that there is no factual basis for the requested discovery.  The Court agrees with Petitioner that it can exercise specific personal jurisdiction over Moving Respondents and that Petitioner is entitled to at least some of the discovery he seeks.  Accordingly, the Petition is granted in part as explained below.

# BACKGROUND[1]

Briefly stated, this matter arises out of Petitioner's investment in certain silver certificate options derivative securities, which were rendered worthless due to the allegedly illegal activities of Moving Respondents and their co-conspirators. (Pet. ¶ 6). On December 29, 2017, Petitioner commenced civil court proceedings against Respondent Deutsche Bank in Saarbrücken, Germany, seeking monetary damages and other remedies. (*Id.* at ¶ 7). Those proceedings are ongoing, and a trial date that had been set for September 2018 has been adjourned *sine die*, but may be rescheduled at any time. (*Id.*).

On August 27, 2018, Petitioner filed an *ex parte* motion for discovery in aid of a foreign proceeding pursuant to § 1782. (*Pfaff* v. *Deutsche Bank AG, New York Branch*, No. 18 Misc. 391 (KPF), Dkt. #1-3). On August 28, 2018, the Court granted the application, permitting Petitioner to serve certain subpoenas on Moving Respondents. (*Id.* at Dkt. #6). The Court also retained jurisdiction over this matter for the purpose of enforcing the Court's order and for

---

[1] The facts in this Opinion are drawn from the Petition ("Pet." (Dkt. #1)); the declaration of Victor Muskin ("Muskin Decl." (Dkt. #2)); the declaration of Heiner Kausch ("Kausch Decl." (Dkt. #3)); the declaration of Geoffrey V. Morson ("Morson Decl." (Dkt. #4)); the declaration of Martin Beier ("Beier Decl." (Dkt. #5)); the declaration of Francis C. Healy ("Healy Decl." (Dkt. #31)); the declaration of Jean-Luc Jacob ("Jacob Decl." (Dkt. #32)); the declaration of Kristen Ciccimarra ("Ciccimarra Decl." (Dkt. #35)); the declaration of Christina Schmitt ("Schmitt Decl." (Dkt. #36)); the supplemental declaration of Heiner Kausch ("Kausch Supp. Decl." (Dkt. #40)); and the supplemental declaration of Geoffrey V. Morson ("Morson Supp. Decl." (Dkt. #41)).

For ease of reference, the Court refers to Petitioner's opening brief as "Pet. Br." (Dkt. #6); DZ Bank's opposition brief as "DZ Bank Opp." (Dkt. #30); Deutsche Bank's opposition brief as "Deutsche Bank Opp." (Dkt. #34); Petitioner's reply to Deutsche Bank's opposition brief as "Pet. Deutsche Bank Reply" (Dkt. #42); Petitioner's reply to DZ Bank's opposition brief as "Pet. DZ Bank Reply" (Dkt. #42); Deutsche Bank's sur-reply brief as "Deutsche Bank Sur-Reply" (Dkt. #49); and Petitioner's rejoinder brief as "Pet. Rejoinder" (Dkt. #50).

assessing any supplemental requests for discovery assistance that Petitioner might request.  (*Id.*).  Since the motion was *ex parte*, the Court ensured that the order was granted without prejudice to any future objections that might be raised by any of the Respondents.  (*Id.*).

Petitioner subsequently issued a subpoena to DZ Bank requesting documents relating to alleged silver and silver derivatives transactions between DZ Bank and Deutsche Bank.  (Pet. ¶ 5; Healy Decl. 2, Ex. A).  DZ Bank objected to the subpoena on the grounds that, among other things, DZ Bank did not engage in any over-the-counter silver or silver derivatives transactions with Deutsche Bank in 2012 or 2013.  (*See id.*, Ex. B).  Particularly in light of this objection, DZ Bank did not produce any documents in response to the subpoena.  (*See id.*, Ex. C, D).[2]

Petitioner also issued a subpoena to Deutsche Bank, and although Deutsche Bank maintained its objections to the Petition, the parties

---

[2]    Petitioner claims that DZ Bank's submission in opposition to the Petition calls into question the veracity of DZ Bank's earlier representations to Petitioner regarding the existence of certain discovery.  In DZ Bank's objections to Petitioner's prior discovery requests, it repeatedly stated that it "did not engage in any trading in silver or silver derivatives with Deutsche Bank in 2012 and 2013."  (*See* Healy Decl., Ex. B).  In the Jacob Declaration, DZ Bank contends that it did not engage in any trading of silver or silver derivates with Deutsche Bank in 2012 and 2013 *from its New York branch office*.  (*See* Jacob Decl. ¶ 4).  To the extent that DZ Bank limits the scope of its assertion to the Court now simply to bolster its personal jurisdiction argument, the Court is not concerned.  To the extent that DZ Bank is intentionally limiting the scope of its assertion because it indeed did engage in silver or silver derivatives trading with Deutsche Bank from another office, the Court urges DZ Bank to correct its prior representations.

Petitioner also contends that DZ Bank has now qualified many of the blanket denials it made in response to the earlier subpoena.  The Court takes this opportunity to remind DZ Bank of its continuing obligation to provide truthful responses to Petitioner's discovery requests.  *See generally In re Gorsoan Ltd.*, No. 17 Civ. 5912 (RJS), 2020 WL 3172777, at *5 (S.D.N.Y. June 15, 2020); *see also* Fed. R. Civ. P. 26(g).

3

corresponded over the course of several months in an effort to narrow the scope of the subpoena to the threshold issues relevant to the German litigation — that is, whether there were any one-to-one hedging transactions between Deutsche Bank and DZ Bank.  (*See* Deutsche Bank Opp. 4).  On March 19, 2019, Deutsche Bank confirmed that it had not identified any documents responsive to the narrowed subpoena requests.  (*Id.*).

On November 2, 2018, the Saarbrücken Regional Court, where Petitioner's German action is pending (the "German Court"), issued an order (the "November 2, 2018 Order") detailing the evidence it required to be submitted in Petitioner's proceeding, which evidence would take the form of an expert opinion.  (Pet. ¶¶ 8, 10).  Specifically, the order states:

> [a] Evidence is to be obtained and submitted relating to Petitioner Pfaff's claim that the respective knock-outs of his certificates on May 8, 2012, May 15, 2012, April 15, 2013 and April 16, 2013 were caused by manipulation of the silver prices by Respondent herein Deutsche Bank;
>
> [b] Evidence is to be obtained and submitted that, in an unmanipulated environment, these knock-outs would not have occurred;
>
> [c] Evidence is to be obtained and submitted by way of an expert opinion. The expert shall in particular comment on the following questions:
>
>> [1] Are manipulations ascertainable on May 8, 2012, May 15, 2012, April 15, 2013 and April 16, 2013?
>>
>> [2] If question 1 is answered in the affirmative: Were the manipulations carried out by Respondent Deutsche Bank?
>>
>> [3] If question 1 is answered in the affirmative: Did the said manipulations cause the respective knock-outs?

4

[4] If question 3 is answered in the affirmative:

> [a] Would the knock-outs have been expected on the respective days even without the manipulations?

> [b] Would the knock-outs also have occurred after the days mentioned above, namely, May 8, 2012, May 15, 2012, April 15, 2013 and April 16, 2013?

The expert's opinion is to be based upon an investment period of between one and two years beginning immediately upon the acquisition by Petitioner Pfaff of each of the respective investments.

(*Id.* at ¶ 8; *see also* Schmitt Decl., Ex. 3).

On January 14, 2020, Petitioner filed the Petition and supporting memorandum of law, requesting that the Court authorize the issuance of subpoenas, interrogatories, and requests for admission to the Respondents. (*See generally*, Pet. & Ex. A-C; Pet. Br.). Petitioner also filed several declarations in support of his Petition. (Dkt. #2-5). The Petition and supporting papers were served on Respondents on January 23, 2020. (Dkt. #9-11). On February 12, 2020, Petitioner and COMEX entered into a stipulation by which COMEX would produce certain discovery to Petitioner, and Petitioner would withdraw his requests for production of certain other discovery. (Dkt. #27). That same day, the Court granted Petitioner's letter motion to add an interrogatory to what had been filed as Exhibit B to his Petition. (Dkt. #28).[3]

---

[3]     The Court again granted Petitioner leave to file a supplemental interrogatory on March 5, 2020. (Dkt. #45).

On February 14, 2020, Moving Respondents filed briefs and declarations in opposition to Petitioner's motion. (Dkt. #30-32, 34-36). Petitioner filed reply briefs and declarations in further support of his motion on March 4, 2020. (Dkt. #40-43). Then, on March 12, 2020, the Court granted Deutsche Bank's request for leave to file a sur-reply. (Dkt. #47). Deutsche Bank subsequently filed its reply brief. (Dkt. #49). On March 16, 2020, Petitioner filed a request for leave to file a rejoinder brief. (Dkt. #50). While the Court never granted Petitioner leave to file a rejoinder brief, the Court has reviewed Petitioner's proposed rejoinder brief and has considered the arguments raised therein. On July 6, 2020, Petitioner submitted a letter to the Court advising it that the German Court had ordered a hearing for the taking of evidence to be held on November 25, 2020. (Dkt. #51).

## DISCUSSION

### A.   Applicable Law

#### 1.   Motions for Discovery in Aid of a Foreign Proceeding Pursuant to 28 U.S.C. § 1782

28 U.S.C. § 1782 provides for "federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp.* v. *Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). Section 1782(a) states, in relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that

6

> the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782. Accordingly, a "district court possesses jurisdiction to grant a [§] 1782 petition if: [i] the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, [ii] the discovery is for use in a proceeding before a foreign tribunal, and [iii] the application is made by a foreign or international tribunal or any interested person." *Kiobel by Samkalden* v. *Cravath, Swaine & Moore LLP*, 895 F.3d 238, 243 (2d Cir. 2018) (internal alterations omitted), *cert. denied*, 139 S. Ct. 852 (2019); *accord Mees* v. *Buiter*, 793 F.3d 291, 297 (2d Cir. 2015); *In re Edelman*, 295 F.3d 171, 175-76 (2d Cir. 2002).

Even if these statutory requirements are satisfied, the Court is not required to order the requested discovery under § 1782; rather, that determination sits within the Court's broad discretion. *See Intel*, 542 U.S. at 264; *see also Kiobel*, 895 F.3d at 244 ("Once a district court is assured that it has jurisdiction over the petition, it '*may* grant discovery under § 1782 in its discretion.'" (emphasis added) (internal citation omitted)). In *Intel*, the Supreme Court set forth the following four non-exclusive factors that a district court should consider when determining whether to exercise its discretion in connection with a § 1782 petition:

> (i) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which event "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad";

(ii) "the nature of the foreign tribunal, the character of the proceeding underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance";

(iii) whether the § 1782 petition "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and

(iv) whether the discovery sought is "unduly intrusive or burdensome."

*Intel*, 542 U.S. at 264-65.  The Second Circuit has held that a district court must apply these factors and exercise its discretion in light of the "twin aims" of § 1782: (a) "providing efficient means of assistance to participants in international litigation in our federal courts" and (b) "encouraging foreign countries by example to provide similar means of assistance to our courts." *Kiobel*, 895 F.3d at 244 (citing *In re Metallgesellschaft AG*, 121 F.3d 77, 79 (2d Cir. 1997)).

## B.    Analysis

### 1.    Petitioner Has Shown That Moving Respondents "Reside" or Are "Found" in the Southern District of New York

Pursuant to § 1782's express requirements, Petitioner is not entitled to the discovery he seeks from Moving Respondents unless Moving Respondents reside or can be "found" in this District.  In order to satisfy this statutory requirement, Petitioner must set forth facts sufficient to establish that the Court possesses personal jurisdiction over Moving Respondents consistent with due process.  *See In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019); *see also In re Petrobras Sec. Litig.*, 393 F. Supp. 3d 376, 382 (S.D.N.Y. 2019) ("This Court therefore concludes that it should apply a personal jurisdiction analysis

8

to determine whether Petrobras is 'found' in the district for the purposes of the
§ 1782 motion."); *In re Sargeant*, 278 F. Supp. 3d 814, 820 (S.D.N.Y. 2017)
("[C]ompelling an entity to provide discovery under § 1782 must comport with
constitutional due process.").

> **a.** **Petitioner Has Failed to Show That This Court May
> Exercise General Personal Jurisdiction over Moving
> Respondents**

Petitioner first asserts that the Court can exercise general personal
jurisdiction over Moving Respondents. Consistent with due process, "[a] court
may assert general jurisdiction over foreign (sister-state or foreign-country)
corporations to hear any and all claims against them when their affiliations
with the State are so 'continuous and systematic' as to render them essentially
at home in the forum State." *Goodyear Dunlop Tires Operations, S.A.* v. *Brown*,
564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co.* v. *Washington*, 326 U.S. 310,
317 (1945)). Aside from "an exceptional case," a corporation is at home (and
thus subject to general jurisdiction, consistent with due process) only in a state
of its: (i) incorporation or (ii) principal place of business. *Daimler AG* v.
*Bauman*, 571 U.S. 117, 137-39 & n.19 (2014); *see Brown* v. *Lockheed Martin
Corp.*, 814 F.3d 619, 627 (2d Cir. 2016) ("[I]n our view *Daimler* established that,
except in a truly 'exceptional' case, a corporate defendant may be treated as
'essentially at home' only where it is incorporated or maintains its principal
place of business — the 'paradigm' cases.").

The Second Circuit has recognized that the Supreme Court's decision in
*Daimler* casts doubt on previous Supreme Court and New York Court of

Appeals cases in which courts had exercised general jurisdiction over a foreign

corporations on the basis of the corporation doing business through a local

branch office in the forum.  *Gucci America, Inc.* v. *Weixing Li*, 768 F.3d 122, 135

(2d Cir. 2014).  In *Gucci*, the Second Circuit applied *Daimler* to hold that the

court did not have general jurisdiction over a nonparty foreign bank in order to

enforce a subpoena served on the bank because the mere fact that the bank

had branch offices in New York did not satisfy the Constitution's due process

requirements.  768 F.3d at 135, 141.  The foreign bank was incorporated and

headquartered elsewhere, it had four branch offices in the United States, and

only a small portion of its worldwide business was conducted in New York.  *Id*.

at 135.

      None of the bases for general personal jurisdiction is satisfied here.

Deutsche Bank is headquartered in Germany, has its principal place of

business in Germany, and is organized under the laws of the Federal Republic

of Germany.  (Ciccimarra Decl. ¶ 4).  Only 9,275 of Deutsche Bank's 91,737

global employees are located in North America, and the United States accounts

for a minority of Deutsche Bank's net revenues.  (*Id*. at ¶¶ 7-8).  Like Deutsche

Bank, DZ Bank is a German bank and financial institution organized under the

laws of Germany and maintains its principal place of business in Frankfurt am

Main, Germany.  (*See* Jacob Decl. ¶ 2; Healy Decl., Ex. E).  DZ Bank maintains

a single branch office in New York at 100 Park Avenue.  (*Id*.).  And while

Moving Respondents concededly have offices and employees in New York, that

alone cannot subject them to general jurisdiction.

In *BNSF Railway* v. *Tyrrell*, 137 S. Ct. 1549, 1558 (2017), the Supreme Court held that BNSF was not subject to general jurisdiction in Montana despite the fact that it "ha[d] over 2,000 miles of railroad track and more than 2,000 employees in Montana." 137 S. Ct. at 1559. "[T]he general jurisdiction inquiry," the Court explained, "does not focus solely on the magnitude of the defendant's in-state contacts," but rather "calls for an appraisal of a corporation's activities in their entirety." *Id.*; *see also id.* ("[A] corporation that operates in many places can scarcely be deemed at home in all of them."). Under this analysis, courts routinely find that having offices and employees in New York are insufficient bases for general jurisdiction. *See, e.g.*, *Gucci*, 768 F.3d at 135 (holding that the Bank of China's "branch offices in the forum" were insufficient to support general jurisdiction);[4] *Petrobras*, 393 F. Supp. 3d at 382-83 ("[E]ven extensive business contacts such as significant physical infrastructure and thousands of employees in a particular state do not constitute [] an exceptional case."); *Sargeant*, 278 F. Supp. 3d at 821 ("Nor is the bare allegation that [the respondent] conducts business in New York sufficient to establish that its operations in that office are so substantial and of such a nature as to render [it] at home in New York.").

---

[4]    The banks discussed in *Gucci* are on all fours with the banks in this case. The Court has received no indication that Moving Respondents' contacts with New York would be materially different from those of Bank of China's, as considered by the Second Circuit in *Gucci*. All three banks are incorporated and maintain their principal places of business abroad, and no "exceptional" circumstances exist that would otherwise support general jurisdiction over them. *Daimler AG* v. *Bauman*, 571 U.S. 117, 139 n.19 (2014).

Petitioner argues that Moving Respondents consented to general personal jurisdiction in New York under New York Banking Law §§ 200, 200-a, and 200-b.  (Pet. Deutsche Bank Reply 6-7; Pet. DZ Bank Reply 9-10).  As factual support for this argument, Petitioner contends that, as the New York branches of foreign banks, Deutsche Bank and DZ Bank are required to be and are in fact licensed by the New York Department of Financial Services ("DFS"), which supervises their activities.  (Pet. Deutsche Bank Reply 6; Pet. DZ Bank Reply 9-10).  Further, Moving Respondents must appoint the Superintendent of Banks as their duly authorized agent for service of process pursuant to New York Banking Law § 200.  (Pet. Deutsche Bank Reply 6; Pet. DZ Bank Reply 9-10).  Petitioner also claims that DZ Bank's sole branch in North America has, among other things, availed itself of state-authorized banking privileges by taking deposits, managing a U.S. securities portfolio, entering into interest rate swaps, and providing services to U.S. customers.  (Pet. Br. DZ Bank 10).

As legal support for this argument, Petitioner cites to a footnote in *Gucci*, 768 F.3d at 136 n.15, which states:

> The district court may also consider whether BOC has consented to personal jurisdiction in New York by applying for authorization to conduct business in New York and designating the New York Secretary of State as its agent for service of process.  N.Y. Bus. Corp. Law §§ 1301(a), 1304(a)(6); N.Y. Banking Law § 200; *Bagdon* v. *Phila. & Reading Coal & Iron Co.*, 217 N.Y. 432, 111 N.E. 1075 (1916) (Cardozo, J.).  *See also Daimler*, 134 S. Ct. at 755–56 (noting that general jurisdiction defines the scope of a court's jurisdiction when an entity "has not consented to suit in the forum" (quoting *Goodyear*, 131 S. Ct. at 2856)).

12

Building on this footnote, Petitioner contends that *Gucci* left open the question of whether a corporation could consent to general personal jurisdiction in a forum where it registered to do business. (Pet. Deutsche Bank Reply 6).[5]

As it happens, however, the Second Circuit has already rejected this "species of argument." *Austl. & N.Z. Banking Grp. Ltd.* v. *APR Energy Holding Ltd.*, No. 17 Misc. 216 (VEC), 2017 WL 3841874, at *4 (S.D.N.Y. Sept. 1, 2017). In *Brown,* the Second Circuit concluded that a foreign corporation did not consent to the exercise of general jurisdiction simply by registering to do business and appointing an agent under the Connecticut business registration statutes. 814 F.3d at 637. The Court reasoned that in light of the "more demanding 'essentially at home' test enunciated in *Goodyear* and *Daimler* ... federal due process rights likely constrain an interpretation that transforms a run-of-the-mill registration and appointment statute into a corporate 'consent' — perhaps unwitting — to the exercise of general jurisdiction by state courts, particularly in circumstances where the state's interests seem limited." *Id.* The Second Circuit also warned that interpreting a foreign corporation's compliance with the Connecticut business registration statute as consent to

---

[5]     Petitioner also cites a case, *World Point Trading PTE* v. *Credito Italiano*, 649 N.Y.S.2d 689, 691-92 (1st Dep't 1996), which he claims stands for the proposition that Banking Law § 200-b(2), which provides that "an action or special proceeding against a foreign banking corporation may be maintained ... by a non-resident ... (e) where the defendant is a foreign banking corporation doing business in this state," affirms the right of a banking corporation or non-resident to sue a foreign banking corporation doing business in New York. (Pet. Deutsche Bank Reply 7; Pet. DZ Bank Reply 11). To the extent the First Department held as much, the holding has been implicitly overruled by later Supreme Court and Second Circuit precedent. The same is true of the other cases on which Petitioner relies, *B&M Kingstone LLC* v. *Mega Int'l Commercial Bank Co., Ltd.*, 15 N.Y.S.3d 318 (1st Dep't 2015), and *Vera* v. *Republic of Cuba*, 91 F. Supp. 3d 561 (S.D.N.Y. 2015). (*See* Pet. Deutsche Bank Reply 7-8).

jurisdiction "would risk unravelling the jurisdictional structure envisioned in *Daimler* and *Goodyear* based only on a slender inference of consent pulled from routine bureaucratic measures that were largely designed for another purpose entirely." *Id.* at 639.

Petitioner claims that *Brown* is inapposite because *Brown* construed Connecticut law, not New York law, and went so far as to say that New York's registration statute presented a much stronger case for the proposition that a corporate registration constitutes consent to general personal jurisdiction. (Pet. Rejoinder 1). But, as a sister court noted in *FrontPoint Asian Event Driven Fund, L.P.* v. *Citibank, N.A.*, No. 16 Civ. 5263 (AKH), 2017 WL 3600425 (S.D.N.Y. Aug. 18, 2017), the dicta in *Brown* does not seem to be referring to New York Banking Law § 200; "the law review article it cited for this proposition contained only a discussion of New York Business Corporation Law § 1301, a different statute." *Id.* at *4.

Courts in this District have expressly rejected Petitioner's argument and have held that registration with DFS is insufficient to give rise to general jurisdiction. *In Motorola Credit Corp.* v. *Uzan*, 132 F. Supp. 3d 518 (S.D.N.Y. 2015), a petitioner filed a § 1782 application seeking discovery from several banks located in New York. Like Petitioner, the petitioner in *Motorola* argued that the banks had "constructively consented to the Court's jurisdiction" by virtue of having "register[ed] with … the Superintendent of the Department Financial Services, who may receive service on their behalf." *Id.* at 521. The court, however, rejected this argument, holding that the "mere operation of a

14

branch office in a forum — and satisfaction of any attendant licensing requirements — is not constitutionally sufficient to establish general jurisdiction." *Id.* (citing *Gucci*, 768 F.3d at 135-36).  "Accordingly, the Court [found] that the banks did not consent to this Court's jurisdiction by registering or being licensed under New York Banking Law § 200 or federal law." *Id.* at 521-22.

In *Sonterra Capital Master Fund Ltd.* v. *Barclays Bank PLC*, 366 F. Supp. 3d 516, 560-61 (S.D.N.Y. 2018), the district court explicitly rejected the argument that Deutsche Bank consented to general personal jurisdiction in New York by virtue of registering in New York pursuant to New York Banking Law §§ 200 and 200-b, the very provisions Petitioner cites here.  The *Sonterra* court explained that "[t]he New York Court of Appeals has interpreted § 200-b to 'confer subject matter jurisdiction and not personal jurisdiction,' ... but "[c]ontrary to Plaintiff's assertion 200-b(2) does not confer personal jurisdiction." *Id.* at 561 (quoting *In re FOREX*, No. 13 Civ. 7789 (LGS), 2016 WL 1268267, at *2 (S.D.N.Y. Mar. 31, 2016)); *see also Dennis* v. *JPMorgan Chase & Co.*, 343 F. Supp. 3d 122, 209 n.488 (S.D.N.Y. 2018) (concluding that relying on New York Banking Law § 200-b to assert personal jurisdiction is "unpersuasive"), *adhered to on denial of reconsideration*, No. 16 Civ. 6496 (LAK), 2018 WL 6985207 (S.D.N.Y. Dec. 20, 2018).  Other courts have reached the same conclusion.  *See, e.g.*, *In re Aso*, No. 19 Misc. 190 (JGK) (JLC), 2019 WL 3244151, at *5 (S.D.N.Y. July 19, 2019) ("declin[ing]," in a § 1782 case, "to bridge the crucial gap between New York's business registration statute and

the Subject Entities' consent to general jurisdiction of state's courts"); *APR Energy*, 2017 WL 3841874, at *4 (rejecting petitioner's argument "that ANZ Bank has nevertheless consented to jurisdiction in New York because its New York branch is regulated by the International Banking Act of 1978"); *Sullivan* v. *Barclays PLC*, No. 13 Civ. 2811 (PKC) 2017 WL 685570, at *39 (S.D.N.Y. Feb. 21, 2017) (holding that Banking Law § 200(3) "does not establish a consent to jurisdiction by the branch's foreign parents, and courts in this District have uniformly rejected plaintiff's argument"); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 (NRB), 2016 WL 1558504, at *7 (S.D.N.Y. Apr. 15, 2016) (holding that Deutsche Bank did not consent to general jurisdiction by registering with New York banking regulators). Petitioner, in cursory fashion, attempts to distinguish these cases in his rejoinder brief.  (*See* Pet. Rejoinder 1-4).  However, he presents no argument that convinces the Court that these cases are incorrect or inapplicable.

Accordingly, Petitioner has failed to show that this Court can exercise general personal jurisdiction over either of Moving Respondents.

### b. Petitioner Has Shown That This Court May Exercise Specific Personal Jurisdiction over Moving Respondents

In the alternative, Petitioner argues that § 1782's express requirement that Moving Respondents "reside" or be "found" within the District is satisfied by the fact that the Court may exercise specific jurisdiction over them.  *See In re del Valle Ruiz*, 939 F.3d at 527.  "In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction."

16

*Goodyear*, 564 U.S. at 919 (internal quotation marks omitted).  For a court to exercise specific jurisdiction over a defendant, consistent with due process, the suit must arise from or relate to the defendant's contacts with the forum. *Bristol-Myers Squibb Co.* v. *Superior Ct. of Ca., San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017).  This requires an analysis of whether the defendant purposefully directed his activity at the forum state.  *See Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 472 (1985).

To determine whether the Court can exercise specific personal jurisdiction over a non-party foreign corporation, the Second Circuit has devised a framework in which the court must: (i) "'first assess the connection between the nonparty's contacts with the forum and the order at issue' and [(ii)] 'then decide whether exercising jurisdiction for the purposes of the order would comport with fair play and substantial justice.'"  *In re del Valle Ruiz*, 939 F.3d at 529 (quoting *Gucci*, 768 F.3d at 137).  In order for the Court to exercise specific personal jurisdiction over a respondent to a § 1782 request, the petitioner must show that "the discovery material sought proximately resulted from the respondent's forum contacts."  *Id.* at 530.  Put differently, the petitioner must show that "the respondent's having purposefully availed itself of the forum must be the primary or proximate reason that the evidence sought is available at all."  *Id.*[6]  At the same time, "where the respondent's contacts are

---

[6]   In *In re del Valle Ruiz*, 939 F.3d 520 (2d Cir. 2019), the Second Circuit explained that Santander's only forum contact that was connected to the discovery sought — Santander's use of two New York City firms, UBS and Citibank, to conduct due diligence — was insufficient to establish specific personal jurisdiction over Santander

broader and more significant, a petitioner need demonstrate only that the evidence sought would not be available but for the respondent's forum contacts." *Id.* The Court explained that its holding "generally require[s] a § 1782 applicant to provide additional specificity concerning the discovery it seeks." *Id.* at 530 n.12.

Petitioner contends that the Court can exercise specific personal jurisdiction over Moving Respondents. He concedes that he is not seeking discovery based on Moving Respondents' activities at their branches in New York. (Pet. Deutsche Bank Reply 9; Pet. DZ Bank Reply 12). Rather, Petitioner contends that the Court can exercise specific personal jurisdiction based on Moving Respondents' "trading activity at COMEX in New York" (Pet. Deutsche Bank Reply 9), and the allegation that Moving Respondents "purposeful[ly] and regular[ly] use[ed] the precious metals markets in New York to conduct" their business (Pet. DZ Bank Reply 13).

The Court agrees with Petitioner that Moving Respondents' trading activity at COMEX in New York provides a sufficient basis for this Court to exercise specific personal jurisdiction over them. Petitioner's supporting declarations explain that Moving Respondents' COMEX trades took place in New York. (*See, e.g.*, Kausch Decl. ¶ 5 ("As shown in in the Complaint, silver trading is global in scale, and is centered on exchanges based in London, New

---

for purposes of § 1782. *Id.* at 531. The Court explained that the petitioner was "required to show that this contact was the *proximate* reason the evidence sought was available, not merely that the evidence would not have been available but for the contact." *Id.* (emphasis in original).

York, Chicago and Shanghai.  In the United States, that exchange is known as COMEX."); *id.* at ¶ 6 ("Formerly known as the Commodity Exchange Inc., COMEX is the primary futures and options market for trading gold and silver futures contracts.  COMEX has the most influence on silver's fluctuating worldwide spot price values and derivatives therefrom.  COMEX utilizes the 'Globex' electronic trading system, which allows market participants to trade futures contracts on COMEX from anywhere in the world.  Globex is operated by the CME Group Inc., a commodities marketplace made up of several exchanges, including COMEX and NYMEX (New York Mercantile Exchange, Inc.)."); *id.* at ¶¶ 7-8 ("The original value of my client's investments, subsequently destroyed, was derived from the spot price of silver (ISO currency symbol XAG).  The spot price fluctuations of silver are mostly determined by COMEX.  Therefore, one can reasonably expect that most, if not all, of the Respondents' silver derivative transactions and price manipulations causing damage in connection with my client's investments were executed at COMEX in New York and/or Chicago."); *see also* Morson Decl., Ex. A (CFTC Order dated January 29, 2018, *In re Deutsche Bank AG and Deutsche Bank Securities, Inc.*, CFTC Dkt. #18-06 ("During the Relevant Period, Deutsche Bank was engaged in precious metals trading, which included making markets and engaging in proprietary trading in, among other things, precious metals spot and futures markets.  As part of Deutsche Bank's business, Traders placed orders and entered into transactions for precious metals futures contracts traded on the Commodity Exchange, Inc. ('COMEX'), a futures exchange and designated

contract market which is owned and operated by CME Group, Inc. ('CME').
Deutsche Bank, by and through its Traders, traded gold, silver, platinum and
palladium futures both for bank customers and on behalf of the bank.")))[7]

While Petitioner does not contend that Moving Respondents executed
their trades from New York,[8] the trades for which Petitioner seeks discovery,
occurred largely through COMEX, which operates in New York, New York.
Many courts in this District have held that trading securities or commodities
on an exchange in the forum subjects the defendant to specific personal
jurisdiction in such forum.  *See, e.g.*, *In re Sumitomo Copper Litig.*, 120 F. Supp.
2d 328, 342-44 (S.D.N.Y. 2000) (holding that New York court could exercise
personal jurisdiction, consistent with due process, over defendants that had
traded copper on COMEX); *see also U.S. Commodity Futures Trading Comm'n* v.
*Wilson*, 27 F. Supp. 3d 517, 529 (S.D.N.Y. 2014) (holding that New York court
could exercise personal jurisdiction over defendants because defendants
executed trades on New York-based exchange and clearinghouse); *U.S.
Commodity Futures Trading Comm'n* v. *Amaranth Advisors, L.L.C.*, 554 F. Supp.

---

[7]     Deutsche Bank argues that the trades for which Petitioner seeks discovery did not
        occur in New York because COMEX is part of the CME Group, which is headquartered
        in Chicago, Illinois and executes trades over servers physically located in Aurora,
        Illinois.  (*See* Deutsche Bank Sur-Reply 6).  Deutsche Bank does not, however, dispute
        that COMEX is a New York corporation, which has its main office in New York City, *see*
        https://www.bloomberg.com/profile/company/344462Z:US.  *See also U.S. Commodity
        Futures Trading Comm'n* v. *Wilson*, 27 F. Supp. 3d 517, 529 (S.D.N.Y. 2014)
        ("Defendants also note that the CFTC has not alleged that the NFX and IDCH
        technological hardware through which orders were placed were actually located in New
        York….  Defendants' emphasis on physicality, however, is misplaced.").

[8]     DZ Bank issued the certificates at issue and entered into any related hedging
        transactions from its headquarters in Frankfurt, Germany.  (*See* DZ Bank Opp. 10
        (citing Jacob Decl. ¶¶ 4-5)).  And Deutsche Bank's traders were located in London and
        Singapore.  (*See* Deutsche Bank Opp. 10).

2d 523, 530 (S.D.N.Y. 2008) (holding that New York court could exercise personal jurisdiction over defendant who "personally placed orders through a NYMEX broker and directed Amaranth traders under his supervision to place orders to trade natural gas futures on NYMEX"); *Sec. & Exch. Comm'n* v. *Alexander*, No. 00 Civ. 7290 (LTS), 2003 WL 21196852, at *2 (S.D.N.Y. May 20, 2003) (finding personal jurisdiction over Greek citizen residing in Greece who carried out his trades on the New York Stock Exchange from Greece by telephone through a Greek brokerage firm).  The Court is, therefore, satisfied that the discovery material sought — which largely relates to Moving Respondents' silver trading through COMEX —proximately resulted from the respondent's forum contacts.  *See In re del Valle Ruiz*, 939 F.3d at 530.

### 2.  The *Intel* Factors Weigh in Favor of Granting the Petition in Part

Now satisfied that § 1782's statutory requirements have been met, the Court considers whether it should, in its discretion, grant the Petition.  While the Court must apply the *Intel* factors outlined above, such factors "are not to be applied mechanistically."  *Kiobel*, 895 F.3d at 245.

The first *Intel* factor that this Court must consider is "whether the person from whom discovery is sought is a participant in the foreign proceeding."  *Kiobel*, 895 F.3d at 244.  If the respondent is a participant in the foreign proceeding, the first factor favors denying the petition because the "need for § 1782 help is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad."  *Schmitz* v. *Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 85 (2d Cir. 2004); *see also Kiobel*, 895 F.3d at

245.  In such circumstances, the "foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence" when appropriate.  *Intel*, 542 U.S. at 264; *see also Schmitz*, 376 F.3d at 85 (finding that "because DT is a participant in the German litigation subject to German court jurisdiction, petitioner's need for § 1782 help is not as apparent").

Here, Deutsche Bank is the defendant in the German legal proceeding.[9] Thus, it is not plainly apparent that Petitioner needs to pursue the sought after discovery through a § 1782 petition.  That Petitioner could obtain discovery from Deutsche Bank in the German proceeding counsels, to some extent, against granting the § 1782 petition.  *See, e.g.*, *In re Kreke Immobilien KG*, No. 13 Misc. 110 (NRB), 2013 WL 5966916, at *5 (S.D.N.Y. Nov. 8, 2013), *abrogated on other grounds by In re del Valle Ruiz*, 939 F.3d 520); *In re Application of Elvis Presley Enters. LLC for an Order to Take Discovery Pursuant to 28 U.S.C. § 1782*, No. 15 Misc. 386 (DLC), 2016 WL 843380, at *3 (S.D.N.Y. Mar. 1, 2016) (holding that "[a]lthough it is not required that [the petitioner] exhaust its remedies under German law, the fact that it has not done so here … weighs against granting the § 1782 application").  At the same time, however, "participation in the foreign proceedings does not automatically

---

[9]    Petitioner makes a confusing argument that "the named *defendant* in the German proceedings (Deutsche Bank) should not conceptually or functionally be seen as the same as the [§] 1782 *witness* Deutsche Bank."  (Pet. Deutsche Bank Reply 12).  Such an argument overlooks the fact that in every § 1782 case, there is a respondent from whom the petitioner seeks discovery, and the first *Intel* factor requires the Court to consider whether that respondent is also a defendant in the foreign proceeding.

foreclose § 1782 aid." *Gorsoan Ltd.* v. *Bullock*, 652 F. App'x 7, 9 (2d Cir. 2016) (summary order).

DZ Bank, on the other hand, is not a party to the German proceedings. It argues that although it is not a party to the underlying German proceeding, there is no allegation that any document requested here is beyond the reach of German jurisdiction.  (DZ Bank Opp. 16 (citing *Kreke*, 2013 WL 5966916, at *5)).  The Court is mindful of the fact that Petitioner may be able to obtain discovery from DZ Bank in the German proceeding; that said, courts applying § 1782 have outright rejected a "quasi-exhaustion" requirement.  *Mees* v. *Buiter*, 793 F.3d 291, 303 (2d Cir. 2015) (rejecting suggestion that granting § 1782 application would be proper only if petitioner had first tried and failed to obtain the discovery in the foreign court).

The second *Intel* factor encourages the district court to consider how receptive the foreign tribunal is to receiving into evidence the fruits of the assistance from the U.S. court.  *Kreke*, 2013 WL 5966916, at *5.  Deutsche Bank suggest that because Petitioner did not approach the German Court with any of its discovery requests, it does not have evidence that the German Court would accept this Court's assistance.  (*See* Deutsche Bank Opp. 13-14).  At the same time, Moving Respondents have not suggested that the German Court would be hostile to Petitioner's discovery request, or that German tribunals in general are not amenable to § 1782 assistance.  "In fact, when German courts have objected to § 1782 requests in the past, they have made their opposition clear."  *Kreke,* 2013 WL 5966916, at *5 (citing *Schmitz*, 376 F.3d at 84

(detailing concerns that German authorities expressed to the U.S. district court about granting a § 1782 request)).

Indeed, according to Petitioner's counsel in the German case, Heiner Kausch:

> The Section 1782 Petition which was filed in this Court in 2018 has already been considered by the German Court. On August 31, 2018, I filed with the German Court (and served upon Deutsche Bank, via Linklaters, its German lawyers) a 74-page Brief, which included the whole initial 1782 Petition and discovery requests (in German and English), plus the discovery Order signed by Judge Failla on August 28, 2018 (in German and English), plus the 50+ page Expert Opinion of Mr. Beier (August 24, 2018) (in German), to which he refers extensively in his Declaration herein and which explained some of his intended expert witness testimony to the German Court at the trial, whenever it occurs. In fashioning and issuing its evidentiary Order in November 2018, the German Court took my Brief and its attachments into account and knew about the discovery that that Petitioner Pfaff was seeking via Section 1782. Indeed, the scope of the evidence that the German court ordered Petitioner to obtain is in part built around my presentation. At no time did the German Court suggest that it would not be receptive to the evidence sought to be produced via Section 1782 discovery, nor did Linklaters claim to the German Court that evidence should not be received or considered by the German Court because it would be obtained by virtue of Section 1782. Having framed its discovery order around my presentation, and having been notified of Petitioner's use of the Section 1782 procedures, the German Court has refrained from setting a new trial date, thus indicating its interest in receiving the evidence to be obtained thereby.

(Kausch Decl. ¶ 10). Thus, the record before the Court indicates that the German Court would be receptive to further evidence Petitioner obtains through this § 1782 proceeding. And while the German Court refused to stay

Petitioner's case pending the outcome of this § 1782 Petition, such refusal was based on § 148 of the German Code of Civil Procedure, which permits a stay of proceedings in German courts only where the parallel proceedings would have a binding effect.  (*See* Schmitt Decl., Ex. 2).  As Kausch points out, the German Court did delay setting a new trial date for almost two years.

The third *Intel* factor suggests that a district court should be more inclined to deny a petitioner's discovery request when that request is little more than "an attempt to circumvent foreign proof gathering restrictions."  542 U.S. at 265.  This is because § 1782 "was not intended 'as a vehicle to avoid … an unfavorable discovery decision' from a foreign tribunal.'"  *Kreke,* 2013 WL 5966916, at *6.  At the same time, however, "[t]hat a country does not enable broad discovery within a litigation does not mean that it has a policy that restricts parties from obtaining evidence through other lawful means."  *In re Accent Delight Int'l Ltd.*, 791 F. App'x 247, 251 (2d Cir. 2019) (summary order) (internal quotation marks omitted).

Moving Respondents argue that because Petitioner has never sought to obtain the relevant discovery in the German proceeding, it is clear that Petitioner is inappropriately forum-shopping by seeking an order from this Court under the United States' broad discovery rules in an effort to avoid the stricter German procedural rules.  Petitioner rejoins that rather than trying to circumvent German discovery rules, he is trying to comply with the German Court's November 2, 2018 order to gather evidence.  (*See* Pet. Deutsche Bank Reply 14-15).  Here as well, Moving Respondents "ha[ve] not provided any

25

showing that the policy or restrictions of [Germany] *prohibit* the discovery sought by Petitioner[].” *Accent Delight*, 791 F. App'x at 251 (emphasis in original).

For the reasons explained in its analysis of the second *Intel* factor, the Court agrees with Petitioner that he is not forum-shopping and that Moving Respondents' reliance on *Kreke* is unwarranted.  In *Kreke*, the court found that the petitioner was trying to evade a German court ruling on discovery.  The Court here has no reason to believe that Petitioner is seeking to avoid an unfavorable discovery decision.  The German Court is aware of Petitioner's use of § 1782 to obtain discovery and has ruled that Petitioner *should* collect certain evidence.  Accordingly, the Court finds that this factor weighs in favor of granting the Petition, as Petitioner is not seeking to circumvent a German court ruling, but rather to comply with one.

The fourth and final *Intel* factor requires the Court to consider whether the discovery sought would be unduly intrusive or burdensome, which the Court does through the lens of the familiar standards of Federal Rule of Civil Procedure 26.  *Mees,* 793 F.3d at 302.  The Second Circuit has instructed that "it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright." *Id.*  "Thus, to the extent a district court finds that a discovery request is overbroad, before denying the application it should ordinarily consider whether that defect could be cured through a limited grant of discovery."  *Id.*

DZ Bank argues that Petitioner's discovery requests are designed to harass and unduly burden DZ Bank.  (DZ Bank Opp. 13-16).  DZ Bank's argument is premised on the facts that: (i) it already informed Petitioner that DZ Bank did not engage in any OTC silver or silver derivatives transactions with Deutsche Bank in 2012 or 2013, including any hedging transactions in connection with Petitioner's turbo certificates (*id.* at 13-15); and (ii) any responsive discovery in DZ Bank's possession exists in Germany, such that DZ Bank would have to collect discovery in Germany, transfer it to the United States for production to Petitioner in New York, and then see it "shipped" back to Germany for use in the German proceeding (*id.* at 15-16).

The Court finds neither of these arguments persuasive.  *First*, the Court has reviewed DZ Bank's responses and objections to Petitioner's first subpoena (*see* Healy Decl., Ex. 2 and 4), and Petitioner's present document requests, interrogatories, and requests for admission (*see* Pet., Ex. A, B, and C). Petitioner's current requested discovery differs substantially from the discovery requested through the first subpoena, and Petitioner is entitled to modify his requests in light of DZ Bank's prior responses and objections.[10]  DZ Bank's second argument is unpersuasive to the Court because it presupposes some sort of "physical discovery" whereby documents or materials are shipped back and forth across the Atlantic Ocean.  That is plainly not the case here.  The discovery Petitioner is seeking is stored electronically.  Accordingly, the Court

---

[10]     Further, as explained *infra* at note 2, there is some doubt as to certain representations DZ Bank made in response to its prior objections and responses.

is not moved by DZ Bank's claim the discovery will be burdensome because it will be found in one place and produced in another.

Deutsche Bank similarly argues that the discovery sought is overly intrusive and burdensome.  (Deutsche Bank Opp. 16-20).  *First*, Deutsche Bank contends that the requested discovery — Petitioner's 21 document requests, 25 interrogatories, and 36 requests for admission — are facially overbroad.  (*Id.* at 16-17).  *Second*, it argues that Petitioner has failed to explain how the discovery he seeks is relevant to the questions posed by the German Court for an expert opinion.  (*Id.* at 18-19).  *Third*, it argues that many of the documents Petitioner seeks are located in Europe, implicating the European Union's data privacy rules, as well as the data privacy regimes of other jurisdictions abroad.  (*Id.* at 19-20).[11]

The Court is aware of the burdens imposed by the scope of Petitioner's requests and the fact that the Court has already granted Petitioner certain discovery.  The Court also agrees with Deutsche Bank that many of Petitioner's requests are overbroad.  For example, one of Petitioner's document requests seeks trading data for "*all* silver trading events in which Deutsche Bank and its traders were involved" during a nearly *two-year* period," while another seeks the "name(s) of trader(s)" and "supervisor(s) of trader(s)" who were "involved directly or indirectly" in *all* silver-trading events in the two-year period between

---

[11]   Beyond vague assertions that European Union data privacy laws would be "implicated," Moving Respondents provide no reason why its document production pursuant to the Petition would actually violate its confidentiality obligations or European Union law. Any concerns could be addressed through a protective order.  *See In re Accent Delight Int'l Ltd.*, 791 F. App'x 247, 252 (2d Cir. 2019) (summary order).

May 9, 2011, and April 16, 2013.  (Pet., Ex. A (emphases added)).  Petitioner's

interrogatories, in turn, request information such as "[t]o what extent did

Deutsche Bank trade, buy, sell[,] or take market positions in or with respect to

silver and silver derivatives during the time period January 1, 2012, to

April 30, 2013, for the bank's proprietary account and on behalf of clients?"

(Pet., Ex. B).  What is more, certain of Petitioner's document requests — such

as Document Request No. 6, which asks for "Details of silver spoofing

transaction in Vorley/Chanu Criminal Complaint ¶ 26, on 'approximately

5/9/2012'" — are far too vague to be understood or responded to by Deutsche

Bank.  (*Id.*).  Other requests, such as the ones seeking documents on certain

individuals' gross compensation and personnel files, are unrelated to the

German Court's November 2, 2018 Order.  And still other requests seek

information related to Moving Respondents' trading on exchanges *other* than

COMEX.  (*See* Dkt. #29).

At the same time, the Court has reviewed Petitioner's expert's

declaration, which outlines why certain discovery is necessary to prove

Petitioner's case in the German Court.  (*See generally* Beier Decl.).  He

explains:

> In this regard, evidence is sought and needed regarding
> the price and volume of silver and silver derivatives buy
> and sell orders placed by Respondent Deutsche Bank
> on specific days and at specific times, and at what times
> these orders were (partially) filled or cancelled.  This
> evidence is needed for the full year before Petitioner Pfaff
> purchased the first 400,000 ounce Turbo certificate on
> May 3, 2012.  This amount of data is needed, to prove
> exactly and in the verifiable detail ordered by the
> German Court that trader manipulations around the

> Knock-Out dates of Petitioner Pfaff's Turbo certificates
> resulted in the terminations.

(*Id.* at ¶ 34).  And the Court has also reviewed the German Court's order stating that the expert's opinion "is to be based on an investment period of between one and two years beginning immediately upon the acquisition of Petitioner Pfaff of each of the respective investments."  (Schmitt Decl., Ex. 3).

Thus, while the Court finds that the discovery requests are overly broad, the Court takes seriously the teaching of *Mees*: when considering a discovery request that is overbroad, the court "should ordinarily consider whether that defect could be cured through a limited grant of discovery."  793 F.3d at 302. In these circumstances, a grant of discovery is warranted — but such discovery must be far more limited than the broad requests attached to the Petition.

Petitioner's most recent submission makes plain that his requests for discovery are now particularly time-sensitive.  In large measure, however, that is a product of Petitioner's own conduct, here and in the German proceedings. The Court directs Petitioner to consult with his attorneys and Mr. Beier, determine precisely what documents he needs to satisfy the November 2, 2018 Order, prioritize among those documents,[12] and submit to Moving Respondents a significantly smaller, narrowly tailored set of discovery requests within 7 days

---

[12]   In this regard, Petitioner is cautioned to take seriously Rule 26(b)(1) of the Federal Rules of Civil Procedure and "consider[] the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

of the date of this Order.  Moving Respondents must note any objections to the revised requests within 14 days of their receipt.

## CONCLUSION

For the reasons explained above, the Petition is GRANTED IN PART as described in the preceding paragraph.

SO ORDERED.

Dated:       July 15, 2020
             New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge